UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RUSSELL SPAZIANI and KATHLEEN SPAZIANI, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) CAUSE NO. 1:12-cv-810-WTL-MJD<br>) |
| FEDEX CORPORATE SERVICES, INC., D.W. NICHOLSON CORPORATION, and SSOE GROUP and/or SSOE, INC., | )<br>)<br>)<br>) |
| Defendants. | ) |

## ENTRY ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on FedEx Corporate Services, Inc., and D.W. Nicholson Corporation's motions for summary judgment (Dkt. Nos. 113 and 116).[1] The motions are fully briefed, and the Court, being duly advised, **GRANTS** the motions for the following reasons.[2]

### I. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476

---

[1] Defendant SSOE Group and/or SSOE, Inc., (collectively, "SSOE") also filed a motion for summary judgment (Dkt. No. 108); however, the Court has been advised that the Plaintiffs and SSOE have reached a settlement. *See* Dkt. No. 157 at 2. Accordingly, the Court will not rule on SSOE's motion for summary judgment at this time.

[2] In light of this Entry, FedEx Corporate Services, Inc., and D.W. Nicholson Corporation's Joint Motion to Exclude/Limit the Testimony of Frank Burg (Dkt. No. 161) and Joint Motion to Exclude Testimony of John Morse (Dkt. No. 163) are **DENIED AS MOOT**.

F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

The present lawsuit arises out of an incident that occurred at FedEx Corporate Services, Inc., ("FedEx") facility at the Indianapolis Airport. On May 25, 2011, Russell Spaziani, an employee of Adaptive Associates, Inc., ("AOA"), was injured when he fell from a ladder at FedEx while performing routine maintenance on a piece of equipment. Thereafter, he and his wife, Kathleen Spaziani, sued FedEx, SSOE, which designed the ladder, and D.W. Nicholson Corporation ("DWN"), which installed the ladder. The facts that follow are those taken in the light most favorable to the Plaintiffs.

In 2006, FedEx contracted with SSOE and DWN to expand the sorting system at its Indianapolis Airport facility. Prior to 2006, the Indianapolis Airport facility had only six package handling lines. FedEx's goal was to be able to process 99,000 packages per hour, and the project became known as the "99K expansion." Specifically, DWN was contracted to "complete the fabrication and installation of the Equipment," and SSOE was contracted to provide "the engineering services for the design and installation of the Equipment." Part of the

2

expansion was to create a "non-con" conveyor ("Line 7") that would be used to transport large or awkwardly-shaped items like golf clubs.

Around 2009, before the 99K expansion was complete, FedEx requested that DWN construct a Mass Dimension Scanning System ("MDSS") platform and ladder for Line 7. This project was not contained in the original contract. With regard to the ladder, FedEx instructed DWN to "duplicate existing on-site installation." Following these instructions, DWN referred to the "typical ladder detail" it had used throughout the 99K expansion. SSOE was not contacted regarding the ladder design for Line 7.

FedEx requested a ladder, despite the fact that its internal policies provided that "other catwalks or platforms" or "stairs" were the preferred means to access elevated platforms. Moreover, instead of using the "typical ladder detail," DWN modified the ladder design. It used 2" x 2" x ½" angle iron instead of 2" x 2" x ¼" angle iron, the ladder had a 25-inch opening instead of a 24-inch opening, and DWN "flared" the top end of the ladder, widening the side rails of the ladder above the height of the platform.

On May 25, 2010, Mr. Spaziani came to the FedEx facility to service the MDSS system; his employer, AOA, contracted with FedEx to provide such maintenance services. As he descended the ladder, his left hand slid off the angle-iron side rail because he could not properly grip the rail. He fell off the ladder to the floor below, sustaining serious injuries.

The Plaintiffs filed suit in Marion County Circuit Court on February 23, 2012; the case was removed to this Court on June 12, 2012. In the Plaintiffs' Third Amended Complaint, Mr. Spaziani asserts one count of negligence against FedEx (Count One), one count of negligence against DWN (Count Two), and one count of negligence against SSOE (Count Three). Mrs. Spaziani asserts one count of loss of consortium against each of the Defendants (Count Four).

FedEx and DWN move for summary judgment on all claims against them in the Plaintiffs' Third Amended Complaint. The Court now turns to their respective motions.

## III. FEDEX'S MOTION FOR SUMMARY JUDGMENT

The Plaintiffs' Third Amended Complaint alleges that FedEx was negligent in allowing a dangerous condition—the ladder— to exist at its facility. In Indiana,

> the owner of property has no duty to furnish the employees of an independent contractor a safe place to work in the broad sense as the phrase is applied to an employer. However, the owner is under a duty to keep the property in a reasonably safe condition for business invitees, including employees of independent contractors.

*Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1264-65 (Ind. Ct. App. 2002) (internal citation omitted). Indiana has adopted the Restatement (Second) of Torts § 343 (1965) to "define" this duty:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*See Pfenning v. Lineman*, 947 N.E.2d 392, 406 (Ind. 2011). Based on this, FedEx argues that it is entitled to summary judgment because it did not know that the ladder presented an unreasonable danger to Mr. Spaziani.

In their Response, the Plaintiffs make several arguments in opposition. First, they argue that FedEx was negligent in choosing to use a ladder instead of stairs as the means to access the MSDS equipment. In support, they rely on Section 14515 of FedEx's design guidelines, entitled

4

"Structural and Miscellaneous Steel/Design." *See* Dkt. No. 155-1. Subsection 1.10, "Maintenance Platforms," provides the following:

1. To be Accessible . . . by (in order of preference):
   a. Other catwalks or platforms.
   b. Stairs.
   c. Ladders.

Dkt. No. 155-1. Therefore, the Plaintiffs argue the following:

> Fed Ex's internal construction guidelines establish certain construction preferences. Among those is the preference—*presumably for safety reasons*—that stairways or catwalks be utilized instead of ladders whenever personnel are required to access elevated platforms. Nevertheless, Fed Ex decided against using a stairway or catwalk to access the MSDS platform and instead opted for a ladder.

Dkt. No. 148 at 7. This is simply not sufficient to support a finding that FedEx was negligent in choosing to use a ladder. While it may have been preferable to use stairs, FedEx's internal guidelines specifically allow ladders to be used. Moreover, as FedEx notes, "[t]he law has long recognized that failure to follow a party's precautionary steps or procedures is not necessarily failure to exercise ordinary care." *Wal-Mart Stores, Inc. v. Wright*, 774 N.E.2d 891, 894 (Ind. 2002) (citing 57A Am.Jur.2d *Negligence* § 187 at 239 (1998)). Other than the choice not to use preferred methods of access, the Plaintiffs have pointed to no evidence that the use of a ladder was negligent.

The same is true with the Plaintiffs' argument that FedEx should have chosen an engineer to design the ladder and/or had the ladder reviewed after-the-fact to evaluate its safety. First, DWN produced a ladder that was based on approved designs from SSOE, an engineering firm. Therefore, it is inaccurate for the Plaintiffs to allege that an engineer did not design the ladder. *See, e.g.*, Dkt. No. 156-1 (DWN construction manager noting that the ladder in question was built in accordance with SSOE-approved ladder designs). More troubling, however, is the fact that the Plaintiffs have submitted no evidence illustrating that had an engineering firm evaluated

5

the design or had the ladder itself been evaluated for safety, FedEx would have been told that the ladder was unreasonably dangerous.

Finally, the Court agrees with FedEx that the Plaintiffs' argument that FedEx was negligent in allowing DWN to "design" the ladder is wholly undeveloped. As FedEx notes,

> [i]n Indiana, the long-standing general rule has been that a principal is not liable for the negligence of an independent contractor. However, five exceptions have been recognized for more than half a century. The exceptions are: (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal.

*Bagley v. Insight Commc'ns Co., L.P.*, 658 N.E.2d 584, 586 (Ind. 1995) (internal citations omitted). Even assuming that DWN was negligent in its design, the Plaintiffs have not explained how FedEx is liable under the above standard nor submitted evidence that would support a finding of liability.

In all, the Plaintiffs have failed to produce any evidence showing that FedEx either knew or should have known that the ladder in question was unreasonably dangerous. Furthermore, because FedEx is entitled to summary judgment on Mr. Spaziani's negligence claim, Mrs. Spaziani's loss of consortium claim against FedEx also must fail. *See Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 525 (Ind. Ct. App. 2001) ("Similarly, with no host tort, Becky Branham's loss of consortium claim also fails."). Accordingly, FedEx's motion for summary judgment (Dkt. No. 113) is **GRANTED**.

## IV.    DWN'S MOTION FOR SUMMARY JUDGMENT

The Plaintiffs' Third Amended Complaint alleges that DWN was negligent in designing, constructing and/or installing the ladder. DWN argues that it "breached no duty to Spaziani because it followed the directions and orders of FedEx." Dkt. No. 117 at 8. In short, it argues

that it "only had the 'typical ladder detail,' so that is what it built." *Id*. at 10. It relies on *Raytheon Engineers & Constructors, Inc. v. Sargent Elec. Co.*, for support which noted that "'there is no breach of duty and consequently no negligence where a contractor merely follows the plans or specifications given him by the owner so long as they are not so obviously dangerous or defective that no reasonable contractor would follow them.'" 932 N.E.2d 691, 695 (Ind. Ct. App. 2010) (quoting *Peters v. Forster*, 804 N.E.2d 736, 742 (Ind. 2004)).

The Plaintiffs, however, argue that "DWN made substantial material changes which deviated from the design specifications provided by the 'typical ladder detail.'" Dkt. No. 144 at 4. Specifically, they argue that

> DWN used a different thickness of steel than the typical ladder detail called for, flared the side rails of the ladder from 18 inches to 24 inches at the top, though the typical ladder detail provided no design for such an expansion, and constructed the ladder with a 25-inch opening where the typical ladder detail called for a 24-inch opening.

*Id*. at 7. However, in Indiana

> noncompliance with the specifications alone does not impose liability beyond the point of acceptance by the owner. Only where such noncompliance creates an imminently dangerous condition would liability survive such acceptance.
>
> Here, Appellants do not assert that the drop-off was turned over in a condition presenting imminent danger to third persons, nor do they assert that INDOT's plans with respect to the drop-off were obviously defective. *They merely assert that Cavett cannot take advantage of the contractor immunity rule where it failed to comply with the contract and such failure to comply resulted in injury to a third party. Such is not the law.*

*Ross v. State*, 704 N.E.2d 141, 148 (Ind. Ct. App. 1998) (emphasis added). Here too, the Plaintiffs have directed the Court to no evidence that DWN's deviations from the "typical ladder detail" created a ladder that was "imminently dangerous." They have not explained how the extra thickness of the angle iron, the flaring, or the one-inch larger opening created an imminent danger that caused Mr. Spaziani's fall. *See* Dkt. No. 144 at 8 (Plaintiffs simply noting the

7

variations). Their only argument is that DWN is not entitled to summary judgment because it did not strictly adhere to the "typical ladder detail." This is not the law, and it is not the Court's role to make the Plaintiffs' arguments for them. *See Johnson v. Cambridge*, 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.").

Because DWN is entitled to summary judgment on Mr. Spaziani's negligence claim, Mrs. Spaziani's loss of consortium claim against DWN also must fail. *See Branham*, 744 N.E.2d at 525. Accordingly, DWN's motion for summary judgment (Dkt. No. 116) is **GRANTED**.

## V. CONCLUSION

Discovery in this case closed on July 9, 2014, *see* Dkt. No. 94 at 2, and the Plaintiffs have directed the Court to no evidence to support a finding of liability for either FedEx or DWN. For all the foregoing reasons, FedEx's motion for summary judgment (Dkt. No. 113) and DWN's motion for summary judgment (Dkt. No. 116) are **GRANTED**. Because SSOE remains a Defendant, no final judgment will issue at this time.

SO ORDERED: 1/07/15

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification